## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

—————————————————————— :
                             :
**CRAFT BEER STELLAR, LLC,**          :
                             :
        **Plaintiff,**                :
                             :
           **v.**                  :
                             :      **Civil Action No. _____**
**GLASSDOOR, INC., and**            :
**JOHN DOES 1-20,**               :
                             :
        **Defendants.**          :
                             :
—————————————————————— :

## COMPLAINT AND DEMAND FOR JURY TRIAL
## I. INTRODUCTION

1.     The Plaintiff, Craft Beer Stellar, LLC, (hereinafter "The Brand" or "CBS"), respectfully submits its Complaint and Demand for Jury Trial (hereinafter the "Complaint") against the Defendants, Glassdoor, Inc., (hereinafter "Glassdoor") and John Does 1-20 (hereinafter "John Does" or the "Does")(collectively, together hereinafter the "Defendants") in the above-captioned action.  The Plaintiff's allegations, as set out herein, are asserted from, and resulting from the Defendants' violations of the following:

     a.   violation of the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, 1836(b)(1), *et seq.* (hereinafter the "DTSA");

     b.   violation of the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030, 1030(g), *et seq.* (hereinafter the "CFAA");

     c.   breach of contract;

d.   breach of implied covenant of good faith and fair dealing;

e.   defamation;

f.   commercial (trade) disparagement;

g.   tortious interference with prospective business relations;

h.   fraud and deceit;

i.   negligent misrepresentation;

j.   aiding and abetting defamation and commercial (trade) disparagement;

k.   the Massachusetts Consumer Protection Act, M.G.L. c. 93, §§ 2 and 11; and/or

l.   civil conspiracy.

2.      The Plaintiff further alleges that, as a result and as caused by the Defendants' breaches, actions, omissions, policies, practices, and/or courses of conduct, CBS has suffered irreparable harm to its business and reputation in the craft beer industry, damages from the Defendants' unfair and deceptive trade practices, and anti-competitive acts, causing lost revenue, lost profits and lost prospective business, together with its injuries and damages.

3.      The Plaintiff respectfully requests that its causes of action against the Defendants proceed to a trial by jury, that judgment be entered on all Counts against the Defendants and that The Brand be awarded its special damages, general and/or compensatory damages and losses, costs, interest, plus multiple and/or punitive damages, attorneys' fees, equitable and declaratory relief, and any such other relief as this Honorable Court deems just and appropriate.

## II. <u>PARTIES</u>

4.      The Plaintiff, Craft Beer Stellar, LLC, is a Massachusetts limited liability company with its principal place of business located at 51 Leonard Street, Cellar Floor, Middlesex County, Belmont, Massachusetts 02478.  Craft Beer Stellar, LLC has two (2) members, Suzanne Schalow, and Kathryn Baker, both of whom are residents of the Commonwealth of Massachusetts.

5.      Upon information and belief, the Defendant, Glassdoor, Inc., is a Delaware corporation, with a principal place of business located at 100 Shoreline Highway, Building A, Mill Valley, Marin County, California 94941, and with its registered agent as being The Corporation Trust Company, located at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

6.      Upon information and belief, the Defendants, John Does 1-20, are unknown persons and/or entities, who have registered with and/or posted upon the website owned and/or maintained by Defendant Glassdoor, Inc., and have distributed, disseminated and published certain false, defamatory and disparaging statements and content, by and through Glassdoor, and while allegedly breaching their contractual duty of confidentiality and duty of loyalty to the Plaintiff. Upon information and belief, the identity, I.S.P. contact information, address, residency and/or other related information of Defendant Does is known, available and/or within the possession, custody and/or control of Defendant Glassdoor, but is not known, available and/or within the possession, custody and/or control of the Plaintiff.

## III. JURISDICTION AND VENUE

7.      The Plaintiff asserts that this Honorable Court has jurisdiction over this action under 28 U.S.C. § 1331, as the Plaintiff has alleged, and there exists against the Defendants, a federal cause of action pursuant to the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, 1836(b)(1), and the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030, 1030(g), *et seq*.

8.      The Plaintiff further asserts that this Honorable Court has jurisdiction over this action under 28 U.S.C. § 1332 because, upon information and belief, the known Parties are of complete diversity and the amount in controversy exceeds $75,000.00.

9.      The Plaintiff further contends that, pursuant to 28 U.S.C. § 1391(b), venue is proper in the District of Massachusetts in that, this Court is the District where the Plaintiff is headquartered and has its principal place of business, and is where the violative conduct described herein is alleged to have occurred.

10.     The Plaintiff contends that this Honorable Court has personal jurisdiction, generally and specifically, over Defendant Glassdoor as arising from its extensive business contacts, generally over time and within the Commonwealth of Massachusetts, and specifically in its business dealings with the Plaintiff regarding the violative conduct, as alleged herein, within the Commonwealth of Massachusetts.

11.     Plaintiff CBS further contends that this Honorable Court has personal jurisdiction, generally and specifically, over Defendant Does, generally over time and within the Commonwealth of Massachusetts, and specifically in their respective business dealings with the Plaintiff, as described in their extensive business dealings and in their respective contracts and/or

employment with the Plaintiff, and described, in detail, by their postings on Glassdoor regarding the violative conduct, as alleged herein, within the Commonwealth of Massachusetts.

## IV. FACTUAL BACKGROUND

### A.     The Brand and Access to Its Confidential and Proprietary Information

12.     Plaintiff Craft Beer Stellar, LLC is a locally owned and operated franchisor of craft beer stores, with franchises located in the Commonwealth of Massachusetts and throughout the United States.  In developing this network of franchises, CBS has developed extensive contacts throughout the craft beer industry and community, including customers, brewers, vendors, distributors and/or members of the craft beer media.

13.     In the ordinary course of operating its franchise network, each franchise retail location is characterized by the moniker "Craft Beer Cellar," or "CBC," together with other identifying information, such as town and/or location.  Persons interesting in acquiring, owning and operating a CBC franchise generally meet with, and are interviewed by, the senior management of The Brand in order to determine whether or not such prospective franchisee meets the standards of The Brand to become an owner and operator a Craft Beer Cellar franchise. In the ordinary course of the Plaintiff's business, due diligence is generally conducted by The Brand and/or by the prospective franchisee.

14.     Upon the conclusion of the preliminary due diligence and interview phase, the Plaintiff, in the ordinary course of its business, generally provides the prospective franchisee, on a confidential basis, with a significant amount of proprietary material, information and training. With  the  expenditure  of  substantial  time,  effort  and  cost,  The  Brand  has  developed  such

confidential and proprietary techniques and methods through its decade of experience, education and training in the craft beer community.

15.    Solely as an example of the due diligence and deliberative process, The Brand delivers prospective franchisees, on a confidential basis, its Franchise Disclosure Document (hereinafter the "FDD"), a substantial document containing detailed information relating to all aspects of operating a Craft Beer Cellar franchise, and which includes, *inter alia*, a sample Franchise Agreement (hereinafter "FA").[1]

16.    Continuing on through the due diligence and deliberative phase, the Plaintiff provides its prospective franchisees with an extended period to review and evaluate, on a confidential basis, the FDD, the sample FA, and other proprietary and confidential information related to the ownership and operation of a craft beer franchise.  *See* Certain Pages of the Franchise Disclosure Document, as attached, restated, and incorporated by reference herein as **Exhibit A**.

17.    Upon the conclusion of the negotiations, and the due diligence and deliberative process, The Brand generally requires prospective franchisees to execute a Franchise Agreement with CBS and to pay a franchise fee to the Plaintiff. With the execution of the FA, The Brand then generally invests a substantial amount of time, effort, man hours and its expertise in educating, assisting and guiding the new franchise owner through the various stages necessary to open its store.

---

[1] The Franchise Disclosure Document and Franchise Agreements contain confidential and proprietary information, together with other CBS documents and information, The Brand has only attached certain specific relevant sections of the FDD and the FA.

18.     The Franchise Agreement between the franchisees and The Brand generally contain standard contractual provisions, which obligate the franchisee to maintain the confidentiality of the Plaintiff's exclusive and proprietary information and property.  Franchisees are required to uphold the high standards of The Brand, to routinely and uniformly follows the standards and requirements of the "CBC" franchise community, and take no steps to harm the goodwill created by The Brand throughout the craft beer community.

19.     Solely as an example of standard franchisee contractual requirements, Section 5.1 of the standard Franchise Agreement, entitled "*Operations Manual, Equipment, Plans and Specifications, and Public Relations,*" generally provides, *inter alia*, in pertinent part:

> "The Operations Manual is and will remain *confidential and our exclusive property*. *You will not disclose*, copy or duplicate any part of the Operations Manual *for any reason*."

*See* Certain Pages of Sample Franchise Agreement, at pp. 1-2 (emphasis added), as attached, restated, and incorporated by reference herein as **Exhibit B**.

20.     As a further example, Section 5.3 of the standard Franchise Agreement, entitled "*Service Marks, Operations Manual, and Method of Operation Are Our Exclusive Property*," generally provides, *inter alia*, in pertinent part:

> "You agree that the Service Marks, Operations Manual, and Method of Operation are *our sole and exclusive property*. Except for the Franchise granted to you by this Agreement, *nothing* in this Agreement or any other agreement *will give you or others any right, title, or interest whatsoever* in or to the Service Marks, Operations Manual, or Method of Operation."

*See* **Exhibit B** at p. 3 (emphasis added).

21.     Solely as an additional example of certain provision, Section 5.9 of the standard Franchise Agreement, entitled "*You Will Not Communicate Confidential Information*," generally provides, *inter alia*, in pertinent part:

> "You *specifically acknowledge* that *you will receive valuable specialized and confidential information, including information regarding our operational, sales, promotional and marketing methods and techniques, operating procedures, processes, practices, lists of suppliers, customer lists, manuals, marketing and sales techniques and strategies, and the Method of Operation*. Unless required by court order or applicable law, *you agree not to copy*, download to internet, intranet, modem, fax, e-mail, mail *or send any confidential material or divulge any material directly or indirectly to any other person or enterprise* outside of the Craft Beer Cellar system."

*See* **Exhibit B**, at pp. 3-4 (emphasis added).

22.     Moreover, as a continuing example, Section 5.10 of the standard Franchise Agreement, entitled "*Conflicting or Competing Interests,*" generally provides, *inter alia*, in pertinent part:

> "You will assure that you and your owners, directors, officers, partners, shareholders, members, employees, consultants, and agents, during the term of this Agreement and for a period of 2 years after expiration or termination of this Agreement *do not*:
>
> ***
>
> 3.      do or perform, directly or indirectly, *any other act injurious or prejudicial to our goodwill* associated with the Service Marks and Method of Operation."

*See* **Exhibit B**, pp.5-6 (emphasis added).

23.     In and throughout its franchisee network, the Plaintiff routinely employs a third-party communication and management system and/or service, known as "Basecamp," in order to

facilitate and organize the management of, and communications between and among, CBS and its franchisees.

24.     Franchise owners have a strict duty to maintain the confidentiality of their communications and as to the proprietary information shared with The Brand and its franchisees. Through Basecamp, franchise owners routinely gain access to confidential and proprietary information, which is not available to the public or third-parties, including but not limited to: information regarding marketing and branding ideas and plans, promotions of certain craft beers, financial and operational information, including information as to sales, margins, costs, discounts, potential franchise locations, vendor contracts and negotiations, and numerous other various aspects of the CBS franchise operations.

### B.     Defendant Glassdoor and Its Website

25.     Upon information and belief, Defendant Glassdoor, Inc. owns and operates a website that allows users to post anonymous comments about their employers and others, including franchisors, business associates and/or affiliated companies.

26.     According to its own website, Defendant Glassdoor, Inc., is one of the world's fastest growing jobs and recruiting sites.  *See* "About Us" screen capture from Glassdoor.com, as attached, restated and incorporated by reference as **Exhibit C**.

27.     Upon information and belief, Defendant Glassdoor, Inc. seeks to tout its supposed reliability as to the content posted on its website, allegedly providing job seekers an "inside scoop" of companies, based on reviews posted by the current and former employees of such companies. The website goes on to state that,

> "[u]nlike other jobs sites, all of this information is entirely shared by those who know a company best — the employees. Add to that millions of the latest jobs — no other site allows you to see which employers are hiring, what it's really like to work or interview there according to employees, and how much you could earn."

*See* **Exhibit C**.

28.     Furthermore, the Defendant's "Corporate Fact Sheet" states, in pertinent part, that,

> "[Glassdoor] is one of the world's largest job and recruiting sites that is changing the way people search for jobs and companies…offer[ing] millions of the latest job listings, paired with proprietary user-generated content including company-specific salary reports, ratings and reviews, CEO approval ratings, interview questions and reviews, benefits reviews, office photos and more."

*See* Glassdoor Corporate Fact Sheet, updated as of February 2018, as attached, restated and

incorporated by reference as **Exhibit D**.

29.     Detailing the scope and breadth of its reach in various sectors and industries,

Defendant Glassdoor also provides a "Site Stats" page, which provides, in part, as follows:

> "Glassdoor Internal Data, December 2017. Glassdoor.com is the second largest job site in the U.S., according to comScore Media Metrix, December 2017.  Glassdoor has nearly 38 million reviews and insights for more than 740,000 companies. Nearly 50 million unique users visit Glassdoor monthly."

*See* Glassdoor.com Press Center / Fact Sheets & Site Stats, as attached, restated and incorporated

by reference as **Exhibit E**.

**C.     Defendant John Does' Glassdoor Reviews of The Brand**

30.     As of on or about March 16, 2018, there are nine (9) reviews of "Craft Beer Cellar,"[2]

as located in Belmont, Massachusetts, which are posted on Glassdoor.com and which are the

---

[2] While Craft Beer Stellar, LLC, is the legal name of the Plaintiff, part of its branding includes, *inter alia*, identification of stores and franchises as "Craft Beer Cellar." The content of the Glassdoor reviews demonstrate that the individuals posting the reviews are referring to the Plaintiff, Craft Beer Stellar, LLC.

subject of the instant action. *See* Screen Captures of Reviews (hereinafter the "Reviews"), as hereby attached, restated, and incorporated by reference herein as **Exhibit F**.

31.     For example, on or about November 18, 2017, an individual, identifying himself / herself as "Current Employee – Anonymous Employee," posted a review, entitled "*Dysfunctional and incompetent*," to the website, as owned and operated by Defendant Glassdoor.  *Id.* at p. 10 (hereinafter the "First November 18th Review").

32.     The First November 18th Review states, *inter alia*, as follows:

> "The best advice I can give prospective franchise owners is to run. Aside from *dishonest sales projections and dishonest startup costs you have to deal with one of the least honest people I have ever known. Suzanne Schalow*.  She has the worst temperament and division making. *Most franchises are not profitable and the majority wish they had never signed on*."

*Id.* at p. 11 (emphasis added).

33.     The First November 18th Review is false, disparaging and defamatory, particularly regarding the confidential and proprietary information regarding alleged "dishonest sales projections," and "dishonest start up costs," and is misleading, misrepresentative, omits material information and is factually untrue, in whole and in part.

34.     The First November 18th Review is false, disparaging and defamatory, particularly regarding the confidential and proprietary information regarding alleged assertion that "[m]ost franchisees [are] not profitable" and the "majority wish they had never signed on," and is misleading, misrepresentative, omits material information and is factually untrue, in whole and in part.

35.     Furthermore, while couched as an alleged "opinion," the statements in the First November 18th Review regarding the Plaintiff's members, Suzanne Schalow and Kathryn Baker, are false, disparaging and defamatory.

36.     Also on or about November 18, 2017, an individual, identifying himself /herself as "Current Employee – Anonymous Employee," posted a review, entitled "*A mess for prospective franchise owners*," to the website, as owned and operated by Defendant Glassdoor. *Id.* at p. 10 (hereinafter the "Second November 18th Review").

37.     The Second November 18th Review states, *inter alia*, as follows:

> "The brand management is a mess, mostly at the hands of Suzanne Schalow.  The *Mismanagement by brand has led to a revolving door of brand staff leaving*. Demanding people sign non competes is asinine.  The *support for franchises is poor* with Suzanne *constantly threatening to take over franchises and put stores in default*.  If you are interested in owning a franchise, the *low margins and long hours and temperamental head quarters* make this a place to stay away from"

*Id.* (emphasis added).

38.     The Second November 18th Review is false, disparaging and defamatory, particularly regarding the confidential and proprietary information regarding alleged employee turnover, and is misleading, misrepresentative, omits material information and is factually untrue, in whole and in part.

39.     The Second November 18th Review is false, disparaging and defamatory, particularly regarding the confidential and proprietary information regarding alleged "poor" level of support for franchisees, and is misleading, misrepresentative, omits material information and is factually untrue, in whole and in part.

40.     The Second November 18th Review is false, disparaging and defamatory, particularly regarding the confidential and proprietary information regarding that alleged a senior manager is allegedly "constantly threatening to take over franchises" or  "put stores in default," and is misleading, misrepresentative, omits material information and is factually untrue, in whole and in part.

41.     The Second November 18th Review is false, disparaging and defamatory, particularly regarding the confidential and proprietary information regarding "low margins" and "long hours," and is misleading, misrepresentative, omits material information and is factually untrue, in whole and in part.

42.     Furthermore, while couched as an alleged "opinion," the statements in the Second November 18th Review regarding a "temperamental head quarters" are false, disparaging and defamatory.

43.     Additionally, on or about January 29, 2018, an individual, identifying himself / herself as "Current Employee – Franchise Owner," posted a review, entitled "*Do not buy a franchise*," to the website, as owned and operated by Defendant Glassdoor. *Id.* at p. 8 (hereinafter the "January 29th Review").

44.     The January 29th Review states, *inter alia*, as follows:

> "As an owner, I fully endorse the other comments. Suzanne is a brash woman who bullies and calls names when confronted about anything. *As a franchisor they offer no real systems or processes to prospective franchises* but you don't find that out until you pay her your franchise fee.  That's when you will receive the *handbook which contains zero original ideas regarding: marketing, sales, or process.  It tells you to face product, keep shelves full, and then lays down mandates that force you as an owner to spend money to conform to their whimsy*.  Make sure you ask them about *pending lawsuits* before you sign your Franchise Agreement, because they

sure don't offer any information like that. Instead they tell you about their insane sales at the flagship store which was opened just outside a dry town at the right time in the right place…You are grossly incompetent as a CEO and you should stick to running the Belmont store."

*Id.* at p. 9. (emphasis added).

45.     The January 29th Review is false, disparaging and defamatory, particularly regarding the confidential and proprietary information regarding that The Brand "offer[s] no real systems or processes to prospective franchises," and is misleading, misrepresentative, omits material information and is factually untrue, in whole and in part.

46.     The January 29th Review is false, disparaging and defamatory, particularly regarding the confidential and proprietary information regarding that "the handbook which contains zero original ideas regarding: marketing, sales or process," and is misleading, misrepresentative, omits material information and is factually untrue, in whole and in part.

47.     The January 29th Review is false, disparaging and defamatory, particularly regarding the confidential and proprietary information regarding that the handbook "tells you to face product, keep shelves full, and then lays down mandates that force you as an owner to spend money to conform to their whimsy," and is misleading, misrepresentative, omits material information and is factually untrue, in whole and in part.

48.     The January 29th Review is false, disparaging and defamatory, particularly regarding the confidential and proprietary information regarding that "pending lawsuits," and is

misleading, misrepresentative, omits material information and is factually untrue, in whole and in

part. *See* **Exhibit A**, at p. 2.[3]

49.     On or about January 31, 2018, an individual, identifying himself / herself as

"Current Employee – Franchise Owner," posted a review, entitled "*Franchisees get lied to, bullied*

*and demeaned regularly – run away!",* to the website, as owned and operated by Defendant

Glassdoor (hereinafter the "First January 31st Review").

50.     The First January 31st Review was removed by Defendant Glassdoor, but ultimately

reposted on February 16, 2018 (hereinafter the "February 16th Review"). *See* **Exhibit F**, at pp. 3-

5; **Exhibit G**, at pp. 1-2 (hereinafter collectively, the First January 31st Review and the February

16th Review are referred hereinafter as the "Reposted Review").

51.     The Review states, *inter alia*, as follows:

> "The franchise program is an utter mess. The *sales projections are off by 50% or*
> *more, and the costs are off by that much too*. There is *little to no support* from 'the
> brand', and with such a *high turnover rate* at the brand level there's no continuity
> of opinions or long-term ideas…. Have an idea? Suzanne will belittle you and call
> you names. Want to complain? Suzanne will insult you… Want to *see the*
> *operations manual*? You have to pay the franchise fee first, and then you get the
> manual. The *manual is truly 50% 'what to buy and how to open,' which should be*
> *a completely separate manual*, and *50% useless info that won't help you succeed*.
> In the '*what to buy' section, they try to be helpful with initial purchases, but they*
> *overshoot the requirements by at least 30% of product and shelving needed*.
>                                                    * * *
>  At least 4 stores (CT, MT, Portsmouth NH, Port Washington NY) and maybe more,
> have closed completely, and 5 or more have sold from their original owners. That

---

[3] Exhibit A states, *inter alia*, as follows: "CBC-Framingham, LLC v. Craft Beer Stellar, LLC and Villa TBR Corp. (Superior Court Commonwealth of Massachusetts Docket No: 16-670). Per a complaint filed March 8, 2016, Plaintiff and Craft Beer Cellar franchisee, CBC Framingham (Framingham), filed claims alleging that we granted an encroaching adjacent franchise, which is a breach of contract, violation of Massachusetts' unfair trade practices, and breach implied duty of good faith and fair dealing. Framingham is seeking equitable relief. On March 31, 2016, in exchange for Framingham posting a $200,0000 bond, a restraining was granted against us precluding our franchisee Villa TBR, co-defendant in the case, from operating a Craft Beer Cellar with 5 miles from Framingham's franchise."

makes 9 out of approximately 35 stores that have closed or changed hands for a nearly 26% failure rate!

* * *

Ask them about _litigation_. Some of it is public knowledge, but they _won't disclose it_ on a discovery document for a new potential franchise location even though they are legally required to do so.

* * *

Ask them about the brand team and support… Suzanne (insults and belittlement galore!), Kate (Who never helps and is essentially silent), Patrick (who still works on Belmont's sales floor as beer geek), and who else? Who are the other 3 that will help forever? With the turnover rates, you're stuck with The Trump Insult Machine Schalow and Silent Kate as your "forever help."

_See_ **Exhibit F**, at pp. 3-5. (emphasis added).

52.      The Reposted Review is false, disparaging and defamatory, particularly regarding the confidential and proprietary information regarding that "sales projections are off by 50%," and is misleading, misrepresentative, omits material information and is factually untrue, in whole and in part.

53.      The Reposted Review is false, disparaging and defamatory, particularly regarding the confidential and proprietary information regarding that "that costs are off by [50%]," and is misleading, misrepresentative, omits material information and is factually untrue, in whole and in part.

54.      The Reposted Review is false, disparaging and defamatory, particularly regarding the confidential and proprietary information regarding the "high turnover rate," and is misleading, misrepresentative, omits material information and is factually untrue, in whole and in part.

55.      The Reposted Review is false, disparaging and defamatory, particularly regarding the confidential and proprietary information regarding the "operations manual" and that the

"manual is truly 50% what to buy and how to open," and is misleading, misrepresentative, omits material information and is factually untrue, in whole and in part.

56.     The Reposted Review is false, disparaging and defamatory, particularly regarding the confidential and proprietary information regarding the "operations manual" and that the manual is "50% useless info that won't help you succeed," and is misleading, misrepresentative, omits material information and is factually untrue, in whole and in part.

57.     The Reposted Review is false, disparaging and defamatory, particularly regarding the confidential and proprietary information regarding the "operations manual" and that the recommended "initial purchases … overshoot the requirements by at least 30% of product and shelving needed," and is misleading, misrepresentative, omits material information and is factually untrue, in whole and in part.

58.     The Reposted Review is false, disparaging and defamatory, particularly regarding the confidential and proprietary information regarding the opening, closure and/or sale of certain stores and/or their locations, and is misleading, misrepresentative, omits material information and is factually untrue, in whole and in part.

59.     The Reposted Review is false, disparaging and defamatory, particularly regarding the confidential and proprietary information regarding that The Brand "won't disclose" the "litigation," and is misleading, misrepresentative, omits material information and is factually untrue, in whole and in part. *See* **Exhibit A**, at p. 2.

60.     On or about January 31, 2018, an individual, identifying himself / herself as "Current Employee – Franchise Owner," posted a review, entitled "*If you want to become a*

*franchisee……DON'T,"* to the website, as owned and operated by Defendant Glassdoor. *See*

**Exhibit F**, at pp. 7-8 (hereinafter the "Second January 31st Review").

61.     The Second January 31st Review states, *inter alia*, as follows:

> "The 'brand' and specifically Suzanne Schalow. Most other employees of the brand don't seem to stick around long. The only constant is Suzanne and this is not a good thing. She is one of the most rude, unhelpful, arrogant, and unprofessional bullies I have ever had the displeasure of working with. Instead of ever getting help, you usually get an insult and then a reminder of how great she and her store are. Any negatives you face are completely your fault despite their promises to  'always be available'. The only thing available to you is a constant reminder of her incompetence. *Many stores are not profitable* as the *margins are low* and the *unrealistic sales projections they provide are virtually impossible to attain*. In addition, *their start-up costs are estimated on the extreme low end*."

*Id*. at p. 8. (emphasis added).

62.     The Second January 31st Review is false, disparaging and defamatory, particularly regarding the confidential and proprietary information regarding that "[m]any stores are not profitable," and is misleading, misrepresentative, omits material information and is factually untrue, in whole and in part.

63.     The Second January 31st Review is false, disparaging and defamatory, particularly regarding the confidential and proprietary information regarding that "margins are low," and is misleading, misrepresentative, omits material information and is factually untrue, in whole and in part.

64.     The Second January 31st Review is false, disparaging and defamatory, particularly regarding the confidential and proprietary information regarding that The Brand's "sales projections" are "unrealistic," and "are virtually impossible to attain," and is misleading, misrepresentative, omits material information and is factually untrue, in whole and in part.

18

65.     The Second January 31st Review is false, disparaging and defamatory, particularly

regarding the confidential and proprietary information regarding that The Brand's "start-up costs

are estimated on the extreme low end," and is misleading, misrepresentative, omits material

information and is factually untrue, in whole and in part.

66.     On or about February 6, 2018, an individual, identifying himself / herself as

"Current Employee – Owner," posted a review, entitled "*Ineffective Brand Team*," to the website,

as owned and operated by Defendant Glassdoor. *Id* at p. 5 (hereinafter the "February 6th Review").

67.     The February 6th Review states, *inter alia*, as follows:

"The main, and largest con of working here has to be the brand team, and their absolute ineffectiveness in pretty much any aspect of their operation. So where do we start?

\* \* \*

Let's start with the *'web store'*. There a bevy of choices that are available that are user friendly, sleek, efficient, and also interface seamlessly with our *POS program*. The "Brand" has decided to not use any of those choices… There have been suggestions from other owners about a better way of going about all this, but it's been met with either silence or veiled insults.

\* \* \*

*Lack of support*. When we expressed interest in opening up a store, we talked to Suzanne, one of the owners of the company, and we were told about *all the support that we would get from the brand team*…. To add to this, nearly 90% of the Brand team works at the Belmont store. This is especially a problem during busy times of the year when if something comes up that you need to get taken care of immediately, you have to wait because they are all working the floor at the Belmont store. It's very clear that Belmont comes first, and everybody else comes later.

\* \* \*

Let's elaborate on that last point. As I mentioned before, it's blatantly obvious that their [sic] is *no distinction between Craft Beer Stellar (the actual company) and Craft Beer Cellar Belmont*. This can be seen when *Belmont gets (or rather demands) the entire allocation of a rare beer*, despite the fact that there are several other CBC's within several miles of them, and thus shafting them… Need something urgently taken care of or answered anytime during a busy week or

19

month? You're just going to have to wait until it's not busy at Belmont to even get a response telling you as much, and you'll get your actual answer after the busy season is over.

*  *  *

In the past year or so, there have been at least 7 people who have left; either through moving on, or being squeezed out by the owners. It's gotten so bad that I don't know who to ask when I need something, or if it's even possible to still get it done with the people they have still working. Instead of helping, or even offering to help, they *pass down arbitrary (and pretty expensive) decrees, with complete disregard of the financial state of many of their stores. They don't seem interested in really fixing anything if it doesn't benefit them or their store's bottom line*, and if you have the audacity to question anything that they do or pass down, then prepare yourself for a barrage of passive aggressive comments and snide remarks.  It's not a question of if that'll happen to you but rather when it'll happen to you."

*Id*. at pp. 5-7. (emphasis added).

68.    The February 6th Review is false, disparaging and defamatory, particularly regarding the confidential and proprietary information regarding that the "web store" and the "POS program," and is misleading, misrepresentative, omits material information and is factually untrue, in whole and in part.

69.    The February 6th Review is false, disparaging and defamatory, particularly regarding the confidential and proprietary information regarding that the "web store" and the "POS program," and is misleading, misrepresentative, omits material information and is factually untrue, in whole and in part.

70.    The February 6th Review is false, disparaging and defamatory, particularly regarding the confidential and proprietary information regarding that there is "no distinction between Craft Beer Stellar (the actual company) and Craft Beer Cellar Belmont," and is misleading, misrepresentative, omits material information and is factually untrue, in whole and in part.

20

71.     The February 6th Review is false, disparaging and defamatory, particularly regarding the confidential and proprietary information regarding that there is "Belmont gets (or rather demands) the entire allocation of a rare beer," and is misleading, misrepresentative, omits material information and is factually untrue, in whole and in part.

72.     The February 6th Review is false, disparaging and defamatory, particularly regarding the confidential and proprietary information regarding that The Brand "pass[es] down arbitrary (and pretty expensive) decrees, with complete disregard of the financial state of many of their stores," and is misleading, misrepresentative, omits material information and is factually untrue, in whole and in part.

73.     The February 6th Review is false, disparaging and defamatory, particularly regarding the confidential and proprietary information regarding that The Brand doesn't "seem interested in really fixing anything if it doesn't benefit them or their store's bottom line," and is misleading, misrepresentative, omits material information and is factually untrue, in whole and in part.

74.     On or about March 8, 2018, an individual, identifying himself / herself as a "Former Employee – Owner," posted a review, entitled "*Buyer Beware*!!" to the website, as owned and operated by Defendant Glassdoor. *Id* at p. 2 (hereinafter the "March 8th Review")(collectively, with the above, hereinafter as the "Reviews").

75.     The March 8th Review states, *inter alia*, as follows:

"Besides the *economics of the franchisee business which is terrible*, having to deal with Suzanne and her massive ego along with her passive aggressive remarks is enough reason to run away…Do yourself a favor and run away she is not a nice person...Be *more honest with your investors*."

21

*Id* at pp. 2-3 (emphasis added).

76.    The March 8th Review is false, disparaging and defamatory, particularly regarding the confidential and proprietary information regarding that the "economics of the franchise business … [are] terrible," and is misleading, misrepresentative, omits material information and is factually untrue, in whole and in part.

77.    The March 8th Review is false, disparaging and defamatory, particularly regarding the confidential and proprietary information regarding that The Brand is not "honest with … [its] investors," and is misleading, misrepresentative, omits material information and is factually untrue, in whole and in part.

78.    On or about February 13, 2018, the Plaintiff communicated with the Defendant, Glassdoor, and emailed regarding certain of the above-referenced Reviews. A representative from the "Content & Community Team" of Defendant Glassdoor responded later that same day. *See*, Various Emails between Suzanne Schalow of the Plaintiff, Craft Beer Stellar, LLC, and Charlee Colwell, of Defendant Glassdoor, Inc., dated February 13, 2018, February 14, 2018, February 21, 2018, and February 22, 2018 (collectively hereinafter as the "Glassdoor Emails"), as hereby attached, restated, and incorporated by reference herein as **Exhibit G**.

79.    Thus, on or about February 13, 2018, The Brand emailed and stated, in pertinent part as follows:

> "I'm reaching out to ask for your assistance in reviewing the six inappropriate/trolled reviews naming Craft Beer Cellar and myself, Suzanne Schalow. I feel that these individuals are trolling and making up fake negative reviews."

*Id.* at p. 3.

80.     Thereafter, on or about February 13, 2018, a representative from Defendant Glassdoor responded to the Plaintiff, in pertinent part, as follows:

> "Your issue has been escalated to me for resolution. I am digging in now to re-moderate these 6 reviews. Expect a decision, on if these violate our guidelines, by 5pm EST, 2/14/18."

*Id.*

81.     Furthermore, on or about February 13, 2018, the Plaintiff emailed and stated, in pertinent part:

> "I look forward to a thoughtful review of these franchise store owners, who seem to want to complain rather than follow the rules. PS: they are not employees - they are **employers** of various Craft Beer Cellar Stores, which I believe is the first challenge."

*Id.* (emphasis in original).

82.     Additionally, on or about that same date, the Plaintiff emailed and further stated in part:

> "I feel that I should inform you that we feel that our reputation has been deeply and detrimentally harmed, because of these fake reviews, by employers of Craft Beer Cellar Franchise Stores (Store Owners). There are potential breaches of confidentiality provisions and Non-Disclosure agreements, which may cause irreparable harm."

*Id.*

83.     Thereafter and in response, on or about February 14, 2018, Defendant Glassdoor responded, in pertinent part as follows:

> "Regarding the posts titled 'Dysfunctional and incompetent', 'A mess for prospective franchise owners', 'Do not buy a franchise.', 'If you want to become a franchisee......DON'T' and 'Ineffective Brand Team' for additional review. We take

our Community Guidelines very seriously. Before any reviews are posted on Glassdoor, they are evaluated to determine if they are within our Guidelines. *We have taken another look at the posts you flagged and will not be removing them from the site*."

*Id*. at pp. 1-2 (emphasis added).

84.     On or about February 14, 2018, Glassdoor did remove the First January 31st Review from the website, as owned and operated by the Defendant Glassdoor, Inc., and as entitled "*Franchisees get lied to, bullied and demeaned regularly - run away*!"

85.     On or about February 21, 2018, the Plaintiff sent an additional email to Defendant Glassdoor, noting that the First January 31st Review, as having previously been removed, had been reposted to the Glassdoor website.  *Id*. at pages 1-2.

86.     The Defendant did not provide prior notice to the Plaintiff that it would be reposting the First January 31st Review to the Glassdoor website.

87.     On or about February 22, 2018, Defendant Glassdoor responded to the Plaintiff, stating that the First January 31st Review had originally been removed because,

> "a non-highest leadership employee was discussed by name, title or association. We only permit discussion of individuals when they represent the public face of the company and have great influence over the broad work environment."

*Id*. at p. 1.

88.     On or about February 22, 2018, Defendant Glassdoor further replied to the Plaintiff, stating that the First January 31st Review had been edited to conform to the policies of Glassdoor and would not be taken down. *Id*.

89.     In or about March 2018, prospective franchisee(s) communicated to The Brand regarding the Reviews, as having been posted by the Defendants Does, and reposted by Defendant

24

Glassdoor, on the Glassdoor website, and noted how the Reviews caused such prospective franchisee(s) to be "spooked," about the false, disparaging and misleading information and content posted in the Reviews.

90.     As a result of the Defendants Does' false, disparaging and misleading Reviews, as posted on Defendant Glassdoor's website, and by the decision of Glassdoor to repost, disseminate and distribute, throughout the Commonwealth of Massachusetts, the United States and globally, the Reposted Review, in breach of their respective contractual duties, under their respective Franchise Agreements and other contracts, of confidentiality and non-disclosure, and their fraudulent actions, omissions, fraudulent concealment, policies, procedures, practices, and/or courses of conduct, the Plaintiff has suffered special damages of $5,000.00 and more, and general and consequential damages and injuries as to losses as to franchise fees, royalties, income, fees, cost, attorney's fees, and injuries, and lost reputation in the craft beer industry and elsewhere, and other compensation, benefits, and other damages, to its detriment.

91.     As a result of the aiding and abetting, unfair and deceptive trade practices, anti-competitive acts and civil conspiracy by Defendant Glassdoor of the Defendants Does' false, disparaging and misleading Reviews, as posted on Defendant Glassdoor's website, and by the decision of Glassdoor to repost, disseminate and distribute, throughout the Commonwealth of Massachusetts, the United States and globally, the Reposted Review, in breach of its policies, practices and procedures, and in aiding and abetting the Defendant Does' breach of their respective contractual duties, under their respective Franchise Agreements and other contracts, of confidentiality and non-disclosure, and their fraudulent actions, omissions, fraudulent

concealment, policies, procedures, practices, and/or courses of conduct, the Plaintiff has suffered special damages exceeding $5,000.00 and exceeding $75,000.00, and general and consequential damages and injuries as to losses as to franchise fees, royalties, income, fees, costs, attorney's fees, and injuries, and lost reputation in the craft beer industry and elsewhere, and other compensation, benefits, and other damages, to its detriment.

## V.  VIOLATIONS OF LAW

### COUNT I – VIOLATION OF 18 U.S.C. § 1836(b)(1)
### (DEFEND TRADE SECRETS ACT)
### (as to Defendant Glassdoor and Defendants John Does 1-20)

92.     The Plaintiff reasserts Paragraphs 1 through 91 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

93.     Upon information and belief and by their own respective posts, Defendants John Does 1-20 are current or former franchisees and/or employees of the Plaintiff.

94.     Upon information and belief and by their own respective posts, certain of the Defendants John Does 1-20 have, and/or have had, a duty of loyalty, and a continuing duty of loyalty to protect and maintain the confidential and proprietary information, as owned by Craft Beer Stellar, LLC.

95.     Upon information and belief and by their own respective posts, certain of the Defendants John Does 1-20 have, and/or have had, a contractual duty, and a continuing contractual duty, to protect and maintain the confidential and proprietary information, as owned by Craft Beer Stellar, LLC.

96.     Upon information and belief and upon being placed on electronic notice by the Plaintiff of the Reviews as being violative of their confidential and proprietary rights, Defendant Glassdoor has, and/or has had, a duty to remove such Reviews, and a continuing duty to remove, and to prevent the continuing damages, injuries and reputational harm by the Defendant Does posting of the confidential and proprietary information, as owned by Craft Beer Stellar, LLC.

97.     The Defendants posted, and/or reposted, the Plaintiff's confidential and proprietary information which included but was not limited to, *inter alia,* information regarding sales projections, costs, margins, franchisee store value, and content as to method of operations, as exclusively owned by the Plaintiff, Craft Beer Stellar, LLC.

98.     The Plaintiff has derived independent economic value from the information being kept from the general public, and has taken measures to preserve this confidentiality, as can be seen in the standard language in their Franchise Agreements. *See generally,* **Exhibit B**.

99.     The Plaintiff further required that all communications, based upon, derived from and/or relating to, such confidential and/or proprietary information of The Brand, be disseminated and distributed through the secure third-party system, known as "Basecamp."

100.     At all relevant times, Plaintiff Craft Beer Stellar, LLC has been operating as a franchisor, with franchises operating in multiple states, including in the Commonwealth of Massachusetts.

101.     By their respective posts, Defendants John Does 1-20 have breached, and continue to breach, their duty of loyalty to protect and maintain the confidential and proprietary information,

as owned by Craft Beer Stellar, LLC, in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(1).

102.    By their respective posts, Defendants John Does 1-20 have breached, and continue to breach, their contractual duty to protect and maintain the confidential and proprietary information, as owned by Craft Beer Stellar, LLC, in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(1).

103.    By its reposting of the removed First January 31st Review, and its refusal to remove the Reviews from the Glassdoor website, after receipt of notice of the same from Plaintiff Craft Beer Stellar, LLC, Defendant Glassdoor has breached, continued to breach, and aiding and abetted the breach and continuing breach of the Defendant John Does 1-20, to protect and maintain the confidential and proprietary information, as owned by Craft Beer Stellar, LLC, in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(1).

104.    As a direct and proximate cause of the Defendants' violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(1), the Plaintiff has suffered irreparable harm, and general, special, general and consequential damages, exceeding $5,000.00 and exceeding $75,000.00, and injuries and losses, including but not limited to franchise fees, royalties, income, fees, costs, attorney's fees, and injuries, and lost reputation in the craft beer industry and elsewhere, and other compensation, benefits, and other damages, to its detriment.

**COUNT II – VIOLATION OF 18 U.S.C. § 1030(g)**
**(COMPUTER FRAUD AND ABUSE ACT)**
**(as to Defendant Glassdoor and Defendants John Does 1-20)**

105.    The Plaintiff reasserts Paragraphs 1 through 104 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

106.    Upon information and belief and by their own respective posts, Defendants John Does 1-20 are current or former franchisees and/or employees of the Plaintiff.

107.    Upon information and belief and by their own respective posts, certain of the Defendants John Does 1-20 voluntarily entered into the employment of the Plaintiff, Craft Beer Stellar, LLC, which established and created, as a matter of law, a duty of loyalty in such Defendant John Does to protect and maintain the confidential and proprietary information of the Plaintiff.

108.    Upon information and belief and by their own respective posts, certain of the Defendants John Does 1-20 voluntarily entered into a Franchise Agreement with CBS, creating a contractual duty and/or continuing contractual duty, to the Plaintiff, Craft Beer Stellar, LLC, which provided, in pertinent part, as follows:

> "You specifically acknowledge that you will receive valuable specialized and confidential information…Unless required by court order or applicable law, you agree not to copy, download to internet, intranet, modem, fax, e-mail, mail or send any confidential material or divulge any material directly or indirectly to any other person or enterprise outside of the Craft Beer Cellar system."

*See* **Exhibit B**, at pp. 3-4.

109.    Upon information and belief and by their own respective posts, Defendants John Does 1-20 have, and/or had, gained access to the databases, computers and electronic systems, including but not limited to Basecamp, of the Plaintiff, such access granted by The Brand under a

duty of loyalty, and a continuing access granted under the continued duty of loyalty to protect and maintain the confidential and proprietary information, as owned by Craft Beer Stellar, LLC.

110.    Upon information and belief and by their own respective posts, Defendants John Does 1-20 have, and/or had, gained access to the databases, computers and electronic systems, including but not limited to Basecamp, of the Plaintiff, such access granted by The Brand under a contractual duty, and a continuing access granted under the continued contractual duty, to protect and maintain the confidential and proprietary information, as owned by Craft Beer Stellar, LLC.

111.    At all relevant times, the Plaintiff required that any and all communications between and among the franchisor and/or the franchisees, based upon, derived from and/or relating to, such confidential and/or proprietary information of The Brand, be disseminated and distributed through the secure third-party system, Basecamp.

112.    Upon information and belief and upon being placed on electronic notice by the Plaintiff of the Reviews as being violative of their access to databases, computers and electronic systems of the Plaintiff, including but not limited to Basecamp, as granted pursuant to the duty, and continued duty, of loyalty, and/or pursuant to the contractual duty, and continued contractual duty, to protect and maintain confidential and proprietary rights of the Plaintiff, Defendant Glassdoor has, and/or has had, a duty to remove such Reviews, and a continuing duty to remove, and to prevent the continuing damages, injuries and reputational harm by the Defendant Does posting of the confidential and proprietary information, as owned by Craft Beer Stellar, LLC.

113.    The Defendants posted, and/or reposted, the Plaintiff's confidential and proprietary information which included but was not limited to, *inter alia,* information regarding sales

projections, costs, margins, franchisee store value, and content as to method of operations, as exclusively owned by the Plaintiff, Craft Beer Stellar, LLC.

114.    The Plaintiff derived independent economic value from the information being kept from the general public, and took measures to preserve this confidentiality, as can be seen in the language taken from its Franchise Agreements. *See generally,* **Exhibit B**.

115.    At all relevant times, Plaintiff Craft Beer Stellar, LLC has been operating as a franchisor, with franchises operating in multiple states, including in the Commonwealth of Massachusetts.

116.    At all relevant times, Defendant John Does 1-20 knowingly, willfully, wantonly, and with the intent to defraud CBS with actual malice, accessed the Plaintiff's proprietary and confidential information stored and secured on its protected third-party database.

117.    At all relevant times, Defendant John Does 1-20 knowingly, willfully, wantonly, and with the intent to defraud The Brand with actual malice, used, disclosed and misappropriated confidential and proprietary information belonging to the Plaintiff, to deliberately cause harm to the business reputation of Craft Beer Stellar, LLC, thus breaching their respective duty of loyalty and/or their respective contractual duty to the Plaintiff.

118.    At all relevant times, Defendant John Does 1-20 knowingly, willfully, wantonly, and with the intent to defraud The Brand with actual malice, exceeded their authorized access to the Plaintiff's protected electronic systems, computers and databases, including but not limited to Basecamp.

119.    By their respective posts, Defendants John Does 1-20 knowingly, willfully, wantonly, and with the intent to defraud The Brand with actual malice, exceeded their authorized access to the Plaintiff's protected electronic systems, computers and databases, including but not limited to Basecamp, and have breached, and continue to breach, their duty of loyalty to protect and maintain the confidential and proprietary information, as owned by Craft Beer Stellar, LLC, in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g).

120.    By their respective posts, Defendants John Does 1-20 knowingly, willfully, wantonly, and with the intent to defraud The Brand with actual malice, exceeded their authorized access to the Plaintiff's protected electronic systems, computers and databases, including but not limited to Basecamp, have breached, and continue to breach, their contractual duty to protect and maintain the confidential and proprietary information, as owned by Craft Beer Stellar, LLC, in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g).

121.    By its reposting the removed First January 31st Review, and its refusal to remove the Reviews from the Glassdoor website, after receipt of notice of the same from Plaintiff Craft Beer Stellar, LLC, Defendant Glassdoor has breached, continued to breach, and aiding and abetted the breach and continuing breach of the Defendant John Does 1—20 to knowingly, willfully, wantonly, and with the intent to defraud The Brand with actual malice, exceed their authorized access to the Plaintiff's protected electronic systems, computers and databases, including but not limited to Basecamp, and breached their duty to protect and maintain the confidential and proprietary information, as owned by Craft Beer Stellar, LLC, in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g).

122.     As a direct and proximate cause of the Defendants' violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g), the Plaintiff has suffered irreparable harm, and general, special, general and consequential damages, exceeding $5,000.00 and exceeding $75,000.00, and injuries and losses, including but not limited to franchise fees, royalties, income, fees, costs, attorney's fees, and injuries, and lost reputation in the craft beer industry and elsewhere, and other compensation, benefits, and other damages, to its detriment.

## COUNT III – BREACH OF CONTRACT
### (as to certain Defendant John Does 1-20)

123.     The Plaintiff reasserts Paragraphs 1 through 122 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

124.     Upon information and belief and by their own respective Glassdoor posts, certain Defendant John Does 1-20 are current and/or former franchisees of the Plaintiff, Craft Beer Stellar, LLC.

125.     In or about various times over the past years, the Plaintiff and Defendant John Does entered into their respective Franchise Agreements.  In the Franchise Agreement, the Parties had agreed as to the access to and use of the Plaintiff's confidential and proprietary information.

126.     Based on the above, including the acts, omissions, and conduct set forth above, Defendant John Does 1-20 knew, or should have known, that the Reviews, as posted on the Glassdoor website, were in breach of the Franchise Agreements and the Plaintiff's policies, practices and procedures.

127.     The Plaintiff performed its obligations under the Franchise Agreements with Defendant Does and in accordance with the FA and consistent with reasonable expectations of the

Parties, and such policies, practices and procedures, in the good faith.

128.    Pursuant to the Franchise Agreements, The Brand invested time, effort, resources, man hours and expertise in the businesses of the Defendant Does, to assist in their goals of becoming successful Craft Beer Cellar franchises.

129.    A breach of contract is a failure, without excuse, to perform a duty which is due under the contract.  Additionally, the interpretation of a contract is a question of law, not fact.  If the wording of the contract is not ambiguous, then the contract must be enforced according to its terms.

130.    Pursuant to the Franchise Agreements, certain Defendant John Does have, and have had, a contractual obligation to protect and maintain, the confidential and proprietary information of Craft Beer Stellar, LLC. *See* **Exhibit B**.

131.    Pursuant to the Franchise Agreements, certain Defendant John Does have, and have had, a contractual obligation not to publish, disseminate and/or distribute, to third-parties, the confidential and proprietary information of Craft Beer Stellar, LLC. *See* **Exhibit B**.

132.    The Plaintiff performed its obligations under the Franchise Agreements, and in good faith.

133.    The Defendants, by their conduct described herein, violated the Franchise Agreements, breaching their contracts with the Plaintiff.

134.    As a direct and proximate cause of the Defendants Does' breaches of contract, the Plaintiff has suffered irreparable harm, and general, special, general and consequential damages, exceeding $5,000.00 and exceeding $75,000.00, and injuries and losses, including but not limited

to franchise fees, royalties, income, fees, costs, attorney's fees, and injuries, and lost reputation in the craft beer industry and elsewhere, and other compensation, benefits, and other damages, to its detriment.

### COUNT IV – BREACHES OF IMPLIED COVENANT OF GOOD FAITH-FAIR DEALING (as to certain Defendant John Does 1-20)

135.    The Plaintiff reasserts Paragraphs 1 through 134 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

136.    It is well established in that every contract carries an implied covenant of good faith and fair dealing whereby the parties treat each other fairly and act in good faith and no party to the contract shall take any action to harm another party's rights under the contract. The duty imposed by this "implied covenant of good faith and fair dealing" pertains to bad faith in the performance of a contract, not just in its execution or negotiation. Implicit in every contract is the requirement on faithfulness to an agreed upon common purpose and consistency with the justified expectations of the other party.

137.    A breach of contract is the failure to perform for which legal excuse is lacking. As a matter of law, a contract existed, which the Defendant Does breached and failed to comply with the covenant of good faith and fair dealing. The law is clear - the John Does had a binding contract and the Defendants have no legal basis, as a matter of law, to avoid their obligations under their Franchise Agreements.

138.    The Defendants had a duty of good faith and fair dealing in their dealings with the Plaintiff and pursuant to the promises, contract, and statements made to the Plaintiff to induce it

to enter into the contract and provide assets to the Defendants in exchange for its comply with the Franchise Agreement and become franchisees, in good faith.

139.   Under the covenant, the Defendants were obligated to the good faith performance of their obligations under the Franchise Agreements with the Plaintiff, and to be faithful and consistent to the justified expectations of The Brand.

140.   As described above, the Defendant John Does breached the implied covenant of good faith and fair dealing with the Plaintiff.

141.   As a direct and proximate cause of the Defendants Does' breaches of the implied covenant of good faith and fair dealing, the Plaintiff has suffered irreparable harm, and general, special, general and consequential damages, exceeding $5,000.00 and exceeding $75,000.00, and injuries and losses, including but not limited to franchise fees, royalties, income, fees, costs, attorney's fees, and injuries, and lost reputation in the craft beer industry and elsewhere, and other compensation, benefits, and other damages, to its detriment.

## COUNT V – DEFAMATION
### (as to Defendant John Does 1-20)

142.   The Plaintiff reasserts Paragraphs 1 through 141 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

143.   The Defendant John Does have published, disseminated and distributed, to third-parties, the Reviews  and posts on the Glassdoor website, which statements are false and untrue, and defamed and disparaged Craft Beer Stellar, LLC.

144. By publishing the statements on Glassdoor.com, Defendants John Does 1-20 have disseminated, distributed and published defamatory statements to a wide range of persons in the Commonwealth of Massachusetts, the United States and globally.

145. The Defendants have published, disseminated and distributed the false and defamatory statements with the knowledge that the statements were false, or with reckless disregard as to the falsity of the statements.

146. The Defendants have published, disseminated and distributed the false and defamatory statements about Craft Beer Stellar negligently, causing it to suffer damages, including loss of revenue, lost profits and injury to its reputation.

147. As a direct and proximate cause of the Defendants Does' defamation, the Plaintiff has suffered irreparable harm, and general, special, general and consequential damages, exceeding $5,000.00 and exceeding $75,000.00, and injuries and losses, including but not limited to franchise fees, royalties, income, fees, costs, attorney's fees, and injuries, and lost reputation in the craft beer industry and elsewhere, and other compensation, benefits, and other damages, to its detriment.

## COUNT VI – COMMERCIAL (TRADE) DISPARAGEMENT
### (as to Defendants John Does 1 – 20)

148. The Plaintiff reasserts Paragraphs 1 through 147 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

149. The Defendants published, disseminated and distributed the false and disparaging statements with the knowledge that the statements were false, or with reckless disregard as to the falsity of the statements.

150.    The Defendants' false and disparaging statements about Craft Beer Stellar, LLC deceive, and have deceived, current and/or potential persons and entities in the craft beer industry, including but not limited current and prospective franchisees, vendors, brewers, distributors, customers, and others, which are, and were, misleading, misrepresentative, omitted material information and are, and were, factually untrue, in whole and in part.

151.    By posting the Review on Glassdoor website, the Defendants have published, disseminated and distributed  defamatory statements to a wide range of persons and entities in the craft beer industry and throughout the Commonwealth of Massachusetts, the United States and globally.

152.    The Defendants intentionally, knowingly, willfully, wantonly, recklessly and/or negligently published, disseminated and distributed the false and disparaging statement concerning Craft Beer Stellar, LLC's business, senior management, operations, finances franchise model and method of business operation, causing potential franchisees, brewers, vendors, distributors, customers and others to regard the Plaintiff as dishonest, imputing deceit and reprehensible conduct to The Brand.

153.    The Defendants intentionally, knowingly, willfully, wantonly, recklessly and/or negligently published, disseminated and distributed the false and disparaging statement concerning the Plaintiff's business, senior management, operations, finances franchise model and method of business operation franchise model and method of business operation, causing CBS to suffer special and general damages, including the monetary loss of a potential franchisees, and injury to the reputation to Craft Beer Stellar, and Craft Beer Cellar franchise locations

154.     As a direct and proximate cause of the Defendants Does' commercial (trade) disparagement, the Plaintiff has suffered irreparable harm, and general, special, general and consequential damages, exceeding $5,000.00 and exceeding $75,000.00, and injuries and losses, including but not limited to franchise fees, royalties, income, fees, costs, attorney's fees, and injuries, and lost reputation in the craft beer industry and elsewhere, and other compensation, benefits, and other damages, to its detriment.

### COUNT VII – TORTIOUS INTERFERENCE
### WITH PROSPECTIVE BUSINESS RELATIONS
### <u>(as to Defendant John Does 1-20)</u>

155.     The Plaintiff reasserts Paragraphs 1 through 154 of the Complaint, together with **<u>Exhibits</u>**, and restates and incorporates them herein by reference.

156.     The Plaintiff has, and has had, prospective business relationships with a number of potential new franchisees, and with brewers, vendors, distributors, customers and others in the craft beer industry.

157.     These prospective business relationships, including but not limited to prospective franchisees, provide franchise fees, royalties, fees and future economic benefit to the Plaintiff.

158.     The Defendant Does knew, or should have known, of the Plaintiff's prospective business relationships and intentionally induced or caused the prospective business relationships, including but not limited to potential franchisees, not to enter into, or continue, pursuing their prospective business relationship.

159.     The Defendants knew, or should have known, about the Plaintiff's prospective business relationships and intentionally, knowingly, willfully, wantonly and/or recklessly, prevented the Plaintiff from acquiring or continuing the prospective relationship.

160.     The Defendants' interference with the Plaintiff's prospective business relationships, in addition to being intentional, knowing, willful, wanton and/or reckless, was improper in motive or means.

161.     As a direct and proximate cause of the Defendants Does' tortious interference with prospective business relationships, the Plaintiff has suffered irreparable harm, and general, special, general and consequential damages, exceeding $5,000.00 and exceeding $75,000.00, and injuries and losses, including but not limited to franchise fees, royalties, income, fees, costs, attorney's fees, and injuries, and lost reputation in the craft beer industry and elsewhere, and other compensation, benefits, and other damages, to its detriment.

### COUNT VIII  - FRAUD AND DECEIT
### (as to Defendant John Does 1-20)

162.     The Plaintiff reasserts Paragraphs 1 through 161 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

163.     The actions of the Defendant John Does, as described herein, constitute fraud and deceit, including but not limited to fraudulent inducement to enter into the Franchise Agreements without intending to honor such Agreements, the following:

   a)     the Defendant Does made false representations of material facts, and/or omitted material facts with a duty of disclosure, knowing or having reason to know of their falsity;

40

b)      the Defendant Does made said misrepresentations and omissions for the purpose of inducing reliance from the Plaintiff; and

c)      the Plaintiff did rely upon said misrepresentations and omissions, to its detriment.

164.    As a direct and proximate cause of the Defendants Does' fraud and deceit, the Plaintiff has suffered irreparable harm, and general, special, general and consequential damages, exceeding $5,000.00 and exceeding $75,000.00, and injuries and losses, including but not limited to franchise fees, royalties, income, fees, costs, attorney's fees, and injuries, and lost reputation in the craft beer industry and elsewhere, and other compensation, benefits, and other damages, to its detriment.

### COUNT IX  - NEGLIGENT MISREPRESENTATION
### (as to Defendant John Does 1-20)

165.    The Plaintiff reasserts Paragraphs 1 through 164 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

166.    The conduct of the Defendant John Does 1-20, as described herein, constitutes negligent misrepresentation in that the Defendants negligently provided the Plaintiff with erroneous and misleading information, including but not limited to, inducement to enter into the Franchise Agreements without intending to honor such Agreements, and negligently omitted material information with a duty to disclose, to the Plaintiff's detriment.

167.    As a direct and proximate cause of the Defendants Does' negligent misrepresentations, the Plaintiff has suffered irreparable harm, and general, special, general and consequential damages, exceeding $5,000.00 and exceeding $75,000.00, and injuries and losses,

including but not limited to franchise fees, royalties, income, fees, costs, attorney's fees, and injuries, and lost reputation in the craft beer industry and elsewhere, and other compensation, benefits, and other damages, to its detriment.

## COUNT X – AIDING AND ABETTING DEFAMATION
## AND COMMERCIAL (TRADE) DISPARAGEMENT
### (Solely as to Defendant Glassdoor, Inc.)

168.    The Plaintiff reasserts Paragraphs 1 through 167 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

169.    As set forth herein, Defendants John Does 1-20 made false, untrue, and defamatory statements against the Plaintiff, Craft Beer Stellar, LLC, in the Reviews and posts on the website of Defendant Glassdoor, Inc.

170.    In or about February 2018, the Plaintiff put Defendant Glassdoor on notice, as to the false, defamatory and disparaging content in the Reviews.

171.    In or about February 2018, after being placed on notice as to the false, defamatory and disparaging nature of the Reviews by the Plaintiff, the  Defendant Glassdoor, Inc. had a duty, and consistent with its policies, practices and procedures, to remove and mitigate the continuing harm to the Plaintiff, as arising from the Reviews.

172.    In or about February 2018, pursuant to its duty, and consistent with its policies, practices and procedures, to remove and mitigate the continuing harm to the Plaintiff, as arising from the Reviews, Defendant Glassdoor removed the First January 31st Review from its website.

173.     In or about February 2018, however, the Defendant breached its duty, and violated its policies, practices and procedures, and refused to remove and mitigate the continuing harm to the Plaintiff, as arising from the remaining Reviews, from its website.

174.     Thereafter, in or about February 2018, however, the Defendant further breached its duty, and violated its policies, practices and procedures, by returning the Reposted Review to its website, refusing to remove and mitigate the continuing harm to the Plaintiff, as arising from the Reposted Review, from its website.

175.     Since in or about February 2018 and the present date, however, Defendant Glassdoor has continued its breach of its duty and, in violation of its policies, practices and procedures, has refused to remove the Reviews from its website, and mitigate the continuing harm to the Plaintiff, as arising from the Reviews.

176.     By its actions set forth herein, Defendant Glassdoor, Inc. aided and assisted in Defendant John Does 1-20 in the causing and commission of defaming and disparaging the Plaintiff, after notice, by maintaining and publishing the defamatory and disparaging statements, knowing they are false and have harmed and injured the Plaintiff.

177.     The Defendant Glassdoor, Inc.'s aiding and abetting Defendant John Does defamation and disparagement of the Plaintiff was improper in motive or means.

178.     As a direct and proximate cause of Defendant Glassdoor's aiding and abetting the defamation and commercial (trade) disparagement by the Defendant Does, the Plaintiff has suffered irreparable harm, and general, special, general and consequential damages, exceeding $5,000.00 and exceeding $75,000.00, and injuries and losses, including but not limited to franchise

fees, royalties, income, fees, costs, attorney's fees, and injuries, and lost reputation in the craft beer industry and elsewhere, and other compensation, benefits, and other damages, to its detriment.

### COUNT XI - VIOLATIONS OF MASSACHUSETTS CONSUMER PROTECTION ACT / M.G.L. C. 93A, §§ 2 & 11 (as to Defendant Glassdoor, Inc. and Defendants John Does 1-20)

179.    The Plaintiff reasserts Paragraphs 1 through 178 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

180.    At all relevant times herein, Defendant Glassdoor conducted a trade or business, as defined by the Massachusetts Consumer Protection Act, M.G.L. c. 93A, within the Commonwealth of Massachusetts.

181.    Upon information and belief and at all relevant times herein, Defendant John Does 1-20 conducted a trade or business, as defined by the Massachusetts Consumer Protection Act, M.G.L. c. 93A, within the Commonwealth of Massachusetts.

182.    The conduct of the Defendants, as described herein, constitutes unfair and deceptive trade practices and anti-competitive acts, under Sections 2 and 11 of the Consumer Protection Act, including but not limited to, the following that:

a)    certain of the Defendant Does executed the Franchise Agreements with full knowledge and understanding of the Defendants' obligations, including but not limited to the obligation to protect and maintain CBS's confidential and proprietary information, to the Plaintiff;

b)    certain of the Defendant Does entered the employ of the Plaintiff with full knowledge and understanding of the Defendants' obligations, including but not

limited to the obligation to protect and maintain CBS's confidential and proprietary information, to the Plaintiff;

c)       fraudulently induced the Plaintiff to enter into the Franchise Agreement(s) with certain John Does, without intending to honor the same and thereby breached their promises and the reasonable expectations of the Plaintiff;

d)       fraudulently induced the Plaintiff to employ certain John Does, without intending to honor their duty of loyalty as to their employer and thereby breached their promises and the reasonable expectations of the Plaintiff;

e)       fraudulently concealed from the Plaintiff the full and complete details of the source of the Reviews by anonymously posting the same;

f)       after receipt of notice from the Plaintiff, Defendant Glassdoor breached its duty, and violated its policies, practices and procedures, by refusing to remove and mitigate the continuing harm to the Plaintiff, as arising from the Reviews, from its website;

g)       after receipt of notice from the Plaintiff, Defendant Glassdoor removed the First January 31st Review, then reposted the same onto its website, in breach of its duty, and violated its policies, practices and procedures, by refusing to remove and mitigate the continuing harm to the Plaintiff, as arising from the Reposted Review, from its website;

h)       after receipt of notice from the Plaintiff, Defendant Glassdoor aided and abetted the defamation, disparagement and breaches of contract of the Defendant

Does, and their violations of the Defend Trade Secrets Act and the Computer Fraud and Abuse Act;

i)       knowingly and intentionally concealed these activities from the Plaintiff, to its detriment; and/or

j)       violated the requirements, terms and conditions of existing statutes, rules and regulations meant for the protection of the public's health, safety or welfare.

183.    As a direct and proximate cause of Defendant Glassdoor's and Defendants John Does 1-20's violations of the Massachusetts Consumer Protection Act, M.G.L. c. 93A §§ 2 and 11, the Plaintiff has suffered irreparable harm, and general, special, general and consequential damages, exceeding $5,000.00 and exceeding $75,000.00, and injuries and losses, including but not limited to franchise fees, royalties, income, fees, costs, attorney's fees, and injuries, and lost reputation in the craft beer industry and elsewhere, and for punitive damages, including multiple or treble damages, and attorney's fees, costs and statutory interest, other compensation, benefits, and other damages, to its detriment.

## COUNT XII – CIVIL CONSPIRACY
### (as to Defendant Glassdoor, Inc. and Defendants John Does 1-20)

184.    The Plaintiff reasserts Paragraphs 1 through 183 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

185.    As set forth herein, certain Defendants John Does executed the Franchise Purchase Agreement with full knowledge and understanding of the Defendants' obligations, including but not limited to the obligation to protect and maintain CBS's confidential and proprietary information, to the Plaintiff.

46

186.    As set forth herein, certain Defendant Does entered the employ of the Plaintiff with full knowledge and understanding of the Defendants' obligations, including but not limited to the obligation to protect and maintain CBS's confidential and proprietary information, to the Plaintiff.

187.    As set forth herein, certain Defendant Does fraudulently induced the Plaintiff to enter into the Franchise Agreement(s) with them, without intending to honor the same and thereby breached their promises and the reasonable expectations of the Plaintiff.

188.    As set forth herein, certain Defendant Does fraudulently induced the Plaintiff to employ them, without intending to honor their duty of loyalty as to their employer and thereby breached their promises and the reasonable expectations of the Plaintiff.

189.    As set forth herein, certain Defendant Does fraudulently concealed from the Plaintiff the full and complete details of the source of the Reviews by anonymously posting the same.

190.    As set forth herein, Defendant John Does 1-20 violated the Defend Trade Secrets Act and the Computer Fraud and Abuse Act.

191.    After receipt of notice from the Plaintiff, Defendant Glassdoor breached its duty, and violated its policies, practices and procedures, by refusing to remove and mitigate the continuing harm to the Plaintiff, as arising from the Reviews, from its website.

192.    After receipt of notice from the Plaintiff, Defendant Glassdoor removed the First January 31st Review, then reposted the same onto its website, in breach of its duty, and violated its policies, practices and procedures, by refusing to remove and mitigate the continuing harm to the Plaintiff, as arising from the Reposted Review, from its website.

193.    Upon receipt of notice from the Plaintiff, Defendant Glassdoor aided and abetted the defamation, the disparagement, and the breaches of contract and duties of loyalty of the Defendant Does, and their violations of the Defend Trade Secrets Act and the Computer Fraud and Abuse Act.

194.    The Defendant Glassdoor was made aware and knew that false, defamatory and disparaging Reviews were published, disseminated and distributed, in breach of contractual duties to protect and maintain confidentiality, and in breach of duties of loyalty, on its website, to the detriment of the Plaintiff.

195.    By reposting the First January 31st Review and refusing to remove the remaining Reviews, Defendant Glassdoor gave substantial assistance and encouragement to Defendant John Does to defame and disparage the Plaintiff, and substantial assistance and encouragement as to the breaches of contract as to maintaining confidentiality, and duties of loyalty of the Defendant Does, and their violations of the Defend Trade Secrets Act and the Computer Fraud and Abuse Act.

196.    As a direct and proximate cause of Defendant Glassdoor's and Defendants John Does 1-20's civil conspiracy, the Plaintiff has suffered irreparable harm, and general, special, general and consequential damages, exceeding $5,000.00 and exceeding $75,000.00, and injuries and losses, including but not limited to franchise fees, royalties, income, fees, costs, attorney's fees, and injuries, and lost reputation in the craft beer industry and elsewhere, and for punitive damages, including multiple or treble damages, and attorney's fees, costs and statutory interest, other compensation, benefits, and other damages, to its detriment.

## VI. <u>REQUESTS FOR RELIEF</u>

WHEREFORE, the Plaintiff, Craft Beer Stellar, LLC, respectfully requests that this Honorable Court grant it the following relief:

A)      determine, order, adjudge and hold that the Defendants have violated the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, 1836(b)(1), *et seq.*, and are liable under the same;

B)      determine, order, adjudge and hold that the Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030, 1030(g), *et seq.*, and are liable under the same;

C)      determine that the Defendants are liable, as set forth herein, and for all damages, losses and costs, as alleged herein;

D)      order, award and award temporary, preliminary and permanent injunctive and equitable relief to the Plaintiff;

E)      determine and award the Plaintiff the actual losses sustained by it as a result of the Defendants' violations of law, as set forth herein;

F)      render an award on behalf of the Plaintiff, on all Counts of the Complaint, and issue findings of fact and rulings of law, as necessary and appropriate, that the Defendants are liable, in all respects;

G)      order, decide, adjudge, and determine that the Defendants' liability is for all losses, injuries and damages, special, consequential, general, punitive and/or otherwise, and for all interest and costs, as alleged herein;

H)      award the Plaintiff its costs, including but not limited to filing fees, costs, expenses and interest, for being required to bring this action;

I)      award the Plaintiff its actual attorneys' fees, for being required to bring this action,

pursuant to the Massachusetts Consumer Protection Act, M.G.L. c. 93A §§ 2 & 11;

J)      award the Plaintiff multiple, double, treble and/or punitive damages, pursuant to

the Massachusetts Consumer Protection Act, M.G.L. c. 93A §§ 2 & 11;

K)      order that Defendant Glassdoor to disclose and deliver any and all information and

documents as to the Defendant John Does 1- 20, including but not limited to names,

accounts, addresses, ISP's, residencies, and any and all other information and documents,

as set forth herein;

L)      order declaratory relief, as may be requested by the Plaintiff; and/or

M)      any additional relief which this Honorable Court deems just and proper.

**THE PLAINTIFF DEMANDS TRIAL BY JURY ON ALL COUNTS SO TRIABLE.**


Respectfully Submitted,
PLAINTIFF, Craft Beer Stellar, LLC,

By its Attorneys,


    _/s/  Philip M. Giordano_
Philip M. Giordano, Esq. (BBO No. 193530)
Russell A. Haverty, Esq. (BBO No. 693260)
Giordano & Company, P.C.
REED & GIORDANO, P.A.
47 Winter Street, Suite 800
Boston, Massachusetts 02108-4774
Telephone: (617) 723-7755
Facsimile: (617) 723-7756
Email: pgiordano@reedgiordano.com
Dated: March 16, 2018              Email: rhaverty@reedgiordano.com